**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 22-167 |
| | ) | Judge Nora Barry Fischer |
| PEDRO OMAR MARTINEZ-ALBA, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM ORDER**

I.      INTRODUCTION

After his third conviction for illegal reentry in violation of 8 U.S.C. § 1326, this Court exercised its discretion and sentenced Defendant Pedro Omar Martinez-Alba ("Defendant") to eighteen (18) months' incarceration followed by three (3) years' supervised release. (Docket Nos. 45; 49).  In reaching this decision, the Court denied his motion for a downward departure based on alleged lesser harms under Guideline § 5K2.11 and his alternative request for a variance under the § 3553(a) factors, and imposed a sentence at the low end of the advisory guidelines range of eighteen (18) to twenty-four (24) months.  (*Id*.).

This matter now returns to the Court on a Mandate issued by the United States Court of Appeals for the Third Circuit on October 13, 2023, remanding the case for resentencing, (Docket No. 56), and the parties' Joint Status Report advising that Defendant was released from custody of the Bureau of Prisons on October 6, 2023, and was subsequently deported to his native Mexico around October 24, 2023, (Docket No. 57).  The parties ask that the Court permit Defendant to waive an in-person appearance, through counsel, and that the Court resentence him to fifteen (15) months' incarceration and three (3) years' supervised release.  (Docket No. 57).  After careful consideration of the parties' positions and for the following reasons, the Court will enter an

amended judgment resentencing Defendant to time served incarceration; thirty-four (34) months' supervised release; and, a $100 special assessment.

II.    BACKGROUND

The Court is well-familiar with Defendant's background and immigration history and presided over his two prior prosecutions for illegal reentry. (*See* PIR at ¶¶ 28, 30). He was born in Mexico and brought to the United States by his parents around the age of ten (10). (*Id*. at ¶ 38). The family entered on an immigrant visa and settled in North Carolina. (*Id*.). At some point, the visa expired and his parents did not take the necessary steps for him to obtain legal status in this country. (*Id*.). He graduated from high school in North Carolina in 2006 and then moved to the Pittsburgh area where he has worked at an El Campesino restaurant. (*Id*. at ¶¶ 49, 51).

In 2011, Defendant was convicted of a DUI in Allegheny County and sentenced to 2 to 4 days' imprisonment and 6 months' probation. (PIR at ¶ 27). Civil immigration proceedings followed, and he was deported and removed from the United States on January 23, 2014. (PIR at ¶¶ 34-36). He married his now-ex-wife Claudia in August of 2014. (PIR at ¶ 42). He reentered this country illegally, leading to his first illegal reentry conviction at Criminal No. 15-196. (PIR at ¶ 28). This Court held a change of plea and sentencing hearing on November 12, 2015, and he was sentenced to time served incarceration after serving approximately two and a half months in prison. (*Id*.). He was deported again a few weeks later. (*Id*.). Claudia was pregnant at the time; she remained in the United States and gave birth to the couple's daughter. (*See* Crim. No. 18-8, Docket No. 24 at ¶¶ 4-5).

Defendant illegally reentered the United States again to rejoin his family. (PIR at ¶¶ 29-30). In 2017, he was prosecuted for another DUI in Westmoreland County. (PIR at ¶ 29). He pled guilty and was sentenced to 90 days to 5 years' incarceration. (*Id*.). He was then transferred

to Immigration and Customs Enforcement ("ICE") custody, which led to his second prosecution for illegal reentry at Criminal No. 18-8. (PIR at ¶ 30). On March 20, 2018, this Court held another change of plea and sentencing proceeding; accepted the parties' plea agreement under the Fast Track Program; granted him the recommended downward departure of four (4) levels; and sentenced him to eight (8) months' incarceration at the low end of the advisory guidelines range of eight (8) to fourteen (14) months. (PIR at ¶ 30). He was deported again on September 4, 2018. (Docket No. 3).

Subsequently, Defendant's wife, daughter and stepchildren joined him in Mexico for a time. (Docket Nos. 41, 42, 49). However, after approximately one year, he and Claudia split up. (*Id*.). His daughter's eczema was exacerbated by the humidity, and they were not able to provide her with the same type of medical care that she received in the United States. (*Id*.). Defendant was operating a small arcade but closed the business after he was "shook down" by cartel members demanding monthly payments for protection. (*Id*.). He found work at hotels. (*Id*.). But he was robbed on two occasions. (*Id*.). After the first incident, Claudia and the children returned to the United States legally and resettled in Cary, North Carolina. (*Id*.). Defendant explained that he was frightened by the second episode to the degree that he decided to illegally reenter the United States again because he believed that it was better to be in jail in the United States than to be dead in Mexico. (*Id*.).

Although Claudia and his daughter were in North Carolina, Defendant returned to the Pittsburgh area in September of 2021. (Docket Nos. 41, 42, 49). He worked again at the El Campesino restaurant run by his family members. (*Id*.). He and Claudia had a shared custody arrangement pursuant to which Defendant's daughter joined him after she completed the school

year, and she was supposed to spend the summer months in this area.  (*Id*.).  Their deal was short lived, as ICE received a tip that he had returned, and he was arrested on June 7, 2022.  (*Id*.).

This latest arrest led to the present case and Defendant's third prosecution for illegal reentry.  (Docket No. 1).  He was transferred from ICE detention to USMS custody on June 30, 2022.  (PIR at ¶ 2).  He pled guilty on August 23, 2022, and the case went through the typical presentence process.  (Docket No. 28; 29; 52).  The parties did not dispute the Probation Office's determination that the advisory guidelines range was properly computed as eighteen (18) to twenty-four (24) months' incarceration and the Court adopted the recommended range.  (PIR at ¶ 56; Docket Nos. 36; 37; 39).

Relevant here, the record is clear that Defendant was arrested and detained by ICE agents on June 7, 2022 and that he had been in custody for approximately five months and ten days as of the date of his November 17, 2022 sentencing.  (PIR at ¶¶ 1, 2, 7).  At that time, he argued that the Court grant him a departure and/or a variance and to sentence him to eight (8) months' incarceration.  (Docket No. 53).  Defense counsel cited to Guideline § 5K2.11 for lesser harms as a basis for the downward departure in his Sentencing Memorandum, but admitted at both the telephone sentencing conference and during the sentencing hearing that he had not found any caselaw in support of his client's position.  *See* Docket No. 53 at 5-6 ("Judge, when I researched it, I didn't find any case law that was factually close that would be authority from courts, district court or otherwise, about the downward departure motion about lesser harms. So I know when I was thinking about the title of the motion and the legal and factual basis for it, I thought about only calling it a motion for downward variance."); *see also* Docket No. 49 at 27-28 ("During the status conference, one of the questions that you asked was did I have any District Court cases under -- I believe under the lesser harms guideline as legal grounds to support the portion of the motion that's

the portion that's labeled a motion for downward departure. And my answer then and my answer now is I don't have individual cases on point."). The Government opposed the motions but did not provide any authority for the Court to consider in its ruling. (Docket Nos. 49 at 32; 53 at 5).

At the sentencing hearing, the Court noted that the Third Circuit had not issued any precedential authority applying the lesser harms guideline in an illegal reentry case but surveyed a number of out-of-circuit cases which had denied departures because the offense is not a specific intent crime and the defendant's reasons for reentering the country illegally did not justify a lesser harms departure. (Docket No. 49). The Court ultimately denied the motion for a downward departure and then acknowledged that it had broader discretion to consider Defendant's arguments in the context of his motion for a variance and denied that motion as well after considering all of the § 3553(a) factors. (*Id*.). Near the conclusion of the proceeding, defense counsel lodged an objection to the Court's ruling.

> MR. LIVINGSTON: Judge, would this be the appropriate time to raise an objection on your rulings with respect to the motion for downward variance -- or downward departure?
>
> THE COURT: Certainly. You can put your objection on the record.
>
> MR. LIVINGSTON: Yes, Your Honor. Not with respect to the motion for downward variance, but when you made the ruling on the motion for downward departure and you acknowledged that other Circuits or other District Courts have cited to the fact that an offense for illegal re-entry under 1326 is not a specific intent crime, I agree, that it is -- whether you call it a general intent crime or a malum prohibitum crime, not a malum in se crime.
>
> And in terms of relative gravity, if the lesser harm's argument is one in which one must as a reviewing Court consider the relative gravity of problem number one, crossing international lines without authority, or problem number two, putting one's own life and/or one's child's life in jeopardy, in this individual instance, safe measures were taken to avoid jeopardy for the child.

> So in this setting, in the context of it being a general intent crime for which an intent to violate is not necessary, I don't think that is a significant factor in weighing whether lesser harms supports a downward departure.
>
> So that's the basis for my objection to your ruling on the motion for downward departure. Thank you, Your Honor.

(Docket No. 49 at 52).  The Court responded, as follows:

> THE COURT: Okay. Your objection is noted, and I would also note for the record, as I understand the facts, that the mother of the child was available, number one.  Number two, that she had some kind of status that she could appear legally in the United States, and that she went back to the United States with the child, and then he followed.

(Docket No. 49 at 52-53).  After addressing the specific objection lodged by the defense that the facts of his case warranted a departure, the Court then further discussed the out-of-circuit precedent and ultimately overruled the objection.  (*Id*. at 53-55).

As is this Court's practice, Defendant was informed by the Court that any notice of appeal was due within fourteen (14) days.  (Docket No. 49 at 56).  Even though Defendant had already been in custody for nearly six (6) months, he neither immediately appealed his sentence nor filed a motion with the Court of Appeals asking for the appeal to be expedited.  *See* 3d Cir. L.A.R. 4.0 ("A party who seeks to expedite a case must file a motion within 14 days after the opening of the case setting forth the exceptional reason that warrants expedition.").  To the contrary, Defendant requested extensions of time from both this Court and the Court of Appeals which resulted in him not filing his appellate brief until June 13, 2023.  (Docket Nos. 47-48; App. No. 23-1010, Docket Nos. 15-18).

With respect to the substance of the appeal, Defendant's sole challenge focused on this Court's denial of his motion for a downward departure as he did not raise any additional errors with his conviction or sentence, including the imposition of the 3-year term of supervised release.

*See United States v. Pedro Omar Martinez-Alba*, App. No. 23-1010, 2023 WL 4061176 (3d Cir. Jun. 13, 2023).  To that end, he claimed that this Court "erroneously determined that U.S.S.G. § 5K2.11 departures for lesser harms are *per se* impermissible when the offense of conviction is a strict liability crime," and asked that the sentence be vacated, and the matter remanded for a resentencing hearing. *Id*. at \*13.

Rather than opposing the appeal, the Government filed a motion to remand the case for a *de novo* resentencing on June 28, 2023.  *See Martinez-Alba*, App. No. 23-1010, Docket No. 28 (3d Cir. Jun. 28, 2023).  In its motion, the Government noted that neither defense counsel nor the prosecutor had cited any caselaw at the original sentencing hearing and that this Court had surveyed out-of-circuit authority in explaining its denial of the departure motion and held that the departure was unavailable since he had not committed a specific intent crime.  *Id*. at ¶ 8.  The Government acknowledged that a discretionary denial of a downward departure motion is unreviewable on appeal but stated that this Court "did not make it clear whether its denial of Martinez-Alba's departure motion was discretionary, or whether it felt itself incapable of departing as a matter of law" as one of the out-of-circuit decisions had so held.  *Id*. at ¶ 6.  The Government then asked for the case to be remanded so that this Court could "reconsider [Defendant's] motion for a downward departure" after considering any authority cited by the parties.  *Id*. at ¶ 12.  Neither party provided the Court of Appeals with any information about the amount of time that Defendant had already served nor his projected release date from BOP custody in their submissions.  *See* App. No. 23-1010, 2023 WL 4061176 (3d Cir. Jun. 13, 2023), Docket No. 28 (3d Cir. Jun. 28, 2023).

During this time, Defendant was in BOP custody and earned credits for good time and/or under the First Step Act which practically reduced the amount of time he was required to serve under the eighteen (18) month sentence.  (Docket No. 57).  As noted, on October 6, 2023, he was

released from custody after serving approximately fifteen (15) months.  (Docket No. 57).  This Court received an Order from the Court of Appeals on October 10, 2023, granting the Government's motion for summary remand.[1]  (Docket No. 54).  In response, the Court entered an Order on October 12, 2023, directing the parties to file a Joint Status Report within two (2) weeks.  (Docket No. 55).  The Court of Appeals then issued a Mandate on October 13, 2023, returning jurisdiction to this Court.  (Docket No. 56).  In their Joint Status Report, the parties asked that the Court allow Defendant to waive an in-person appearance and resentence him to fifteen (15) months' imprisonment and three (3) years' supervised release.

III.   DISCUSSION

The Court next turns to the governing legal standards.  It is well established that upon remand from the Court of Appeals it is this Court's responsibility to consult the mandate of the Court of Appeals and to determine the scope of proceedings authorized thereunder.  *See United States v. Kennedy*, 682 F.3d 244, 253 (3d Cir. 2012). The so-called "mandate rule" provides that "on remand for further proceedings after [a] decision by an appellate court, the trial court must proceed in accordance with the mandate and the law of the case as established on appeal." *Id*. at 252-53 (citing *Bankers Trust Co. v. Bethlehem Steel Corp.*, 761 F.2d 943, 949 (3d Cir. 1985)). "A trial court must implement both the letter and spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces." *Id*.  In the context of a resentencing proceeding, the Court is to determine if the proceedings are to be conducted *de novo* or limited to

---

[1]      The Court notes that the Court of Appeals' Order is dated September 21, 2023 and appears to have been entered on the Court of Appeals' docket at App. No. 23-1010 on that date.  However, as is indicated on this Court's docket at Crim. No. 22-167, the Court of Appeals' Order was entered on October 10, 2023, and the date of filing was adjusted by the Clerk's Office to September 21, 2023 "upon request of the Third Circuit case manager."  (Docket No. 55).  Regardless, this Court was not alerted to the entry of the Order until October 10, 2023, and this Court did not have jurisdiction over the matter until the mandate was received.  Upon receipt of the Order on October 10, 2023, the Court's staff immediately looked up the Defendant's custody status on the Bureau of Prisons' website and learned that he had been released a few days earlier.  *See* Federal Bureau of Prisons, Inmate Locator, *available at:* https://www.bop.gov/inmateloc/ (last visited 11/27/23).

the issues that were the subject of the remand order. *See United States v. Miller*, 594 F.3d 172, 179 (3d Cir. 2010); *see also United States v. Walpole*, 599 F. App'x 56, 58 (3d Cir. 2015) (citing *United States v. Ciavarella*, 716 F.3d 705, 735 (3d Cir. 2013)). Further, "[a] party may not litigate on remand or subsequent appeal issues that 'were not raised in [the] party's prior appeal and that were not explicitly or implicitly remanded for further proceedings.'" *United States v. Smith*, 751 F.3d 107, 122 (3d Cir. 2014) (quoting *Skretvedt v. E.I. DuPont De Nemours*, 372 F.3d 193, 203 (3d Cir. 2004)).

Having reviewed the facts and circumstances of the appeal and the Mandate from the Court of Appeals directing that Defendant be resentenced, it appears that the intent of the Court of Appeals was for this Court to:

- convene a resentencing hearing;

- permit the parties to reargue the motion for a downward departure and provide the Court with pertinent authority which they did not do at the initial sentencing;

- make another ruling on the motion for downward departure explicitly stating whether the Court is exercising its discretion or not; and,

- then resentence the Defendant after considering the § 3553(a) factors.

(Docket No. 56).

However, this Court must interpret the Mandate with reference to Defendant's custody status at the time that it was received. To that end, it is uncontested that Defendant earned good time and First Step Act credits and was released from the custody of the Bureau of Prisons on October 6, 2023, after serving approximately fifteen (15) months in jail. (Docket No. 57). He was immediately forwarded to ICE and held in administrative detention until he was deported around October 24, 2023. (*Id.*). Courts have held that a transfer of a defendant from BOP to ICE custody

does not operate to toll the commencement of his term of supervised release such that Defendant's 3-year term of supervised release commenced as of October 6, 2023 and would have ended on October 5, 2026.  *See e.g., United States v. Garcia-Rodriguez*, 640 F.3d 129, 134 (5th Cir. 2011) (holding "that administrative detention by ICE does not qualify as imprisonment and that, for purposes of § 3624(e), Garcia was 'released from imprisonment' the moment he was transferred from BOP custody to ICE custody to await deportation.").  Thus, Defendant was on federal supervised release at the time the Mandate was issued vacating his sentence and remanding for resentencing.  Stated differently, as of October 13, 2023, Defendant had fully served the period of incarceration imposed by this Court and eight (8) days toward his 3-year term of supervised release.

In similar situations, the Court of Appeals has recognized that the only relief available to a defendant challenging a sentence of imprisonment who had been released from custody would be for the District Court to reduce the period of supervised release or impose less stringent conditions. *See e.g., United States v. Garcia-Vasquez*, 70 F.4th 177, 179 (3d Cir. 2023) ("Even though Garcia-Vasquez has just finished his prison term and may soon be removed, this case is not moot. If we granted relief, the District Court on remand could credit any excess imprisonment against his remaining supervised-release term."). The Court of Appeals has further noted that the fact that a defendant has been deported and cannot appear for a resentencing hearing does not moot a case because a defendant's "presence would not necessarily be required for a modification of supervised release" pursuant to Rule 32.1(c)(2) of the Federal Rules of Criminal Procedure.  *United States v. Flores-Juarez*, 723 F. App'x 84, 87 (3d Cir. 2018) (citation omitted).  Indeed, Rule 32.1(c)(2) generally permits the Court to modify the conditions of release without a hearing if: "(A) the person waives the hearing; or (B) the relief sought is favorable to the person and does not extend the term

of […] supervised release; and (C) an attorney for the government has received notice of the relief sought, has had a reasonable opportunity to object, and has not done so."   Fed. R. Crim. P. 32.1(c)(2).

By way of example, in *United States v. Mateo-Medina*, the Court of Appeals held that the District Court committed procedural error as it relied on a defendant's bare arrest record in sentencing the defendant to twelve (12) months' imprisonment.   845 F.3d 546, 548-49 (3d Cir. 2017).   Although the defendant had fully served the period of incarceration, the Court of Appeals noted that "he remains subject to the remainder of his two-year term of supervised release, with all of the restrictions that supervised release entails" and remanded the case for a "resentencing that accurately reflects Mateo-Medina's minor criminal history [and] will afford him some relief from those restrictions."  *Id*.   On remand, the District Judge did not hold a hearing and entered an amended judgment, noting that defendant had served the sentence of incarceration and had been deported and declined to impose a term of supervised release.  *See United States v. Mateo-Medina*, Crim. No. 15-55 (E.D. Pa. Mar. 7, 2017).

Returning to the instant matter, the parties ask that Defendant be permitted to waive his appearance and agree that he should be resentenced to a period of incarceration of fifteen (15) months and three (3) years' supervised release.  (Docket No. 57).   Given the above authority, the only relief available to Defendant upon resentencing is a potential reduction of the term of supervised release which this Court may order without conducting a hearing.  *See Garcia-Vasquez*, 70 F.4th at 179; *see also* Fed. R. Crim. P. 32(c)(2).  With that said, the parties requested the remand because the record was allegedly ambiguous as to whether this Court understood that it had the discretion to depart downward under Guideline § 5K2.11.   To clarify, the Court certainly understands that departures are discretionary and has recognized this legal principle repeatedly in

other matters.  *See e.g.*, *United States v. Patterson*, Crim. No. 16-140, 2018 WL 6567714, at *1 (W.D. Pa. Dec. 13, 2018) (citing *United States v. Perry*, 460 F. App'x 149, 153 (3d Cir. 2012)) ("it is well settled that whether to grant a departure is committed to the sound discretion of the Court.").  The Court conducted its own research because defense counsel admitted that he had not found any Third Circuit authority supporting a lesser harms departure, and the Court is fully aware that the out-of-circuit cases were non-binding and, at most, persuasive authority.  (Docket Nos. 49 at 27-28; 53 at 5-6).  In any event, the Court noted its considerable discretion and broader authority to consider the defense's lesser harms arguments in the context of Defendant's motion for a variance under the § 3553(a) factors and denied that motion as well.  (Docket No. 49 at 13; 40-45).  The Court likewise overruled Defendant's objection and pointed out that his lesser harms theory was not warranted because his ex-wife and child had returned to the United States before he had illegally reentered this country for the third time.  (*Id*. at 52-53).  All told, the Court does not believe that the facts of this matter warranted the requested departure and would decline to exercise its discretion to depart if it revisited the issue.

After once again considering all of the relevant § 3553(a) factors, the Court will enter an amended judgment sentencing Defendant to time served incarceration (from June 30, 2022 to October 6, 2023) and thirty-four (34) months' supervised release.  *See* 18 U.S.C. § 3553(a).  The Court believes that such sentence is consistent with the parties' recommendation because Defendant was in jail for approximately fifteen (15) months when the BOP released him from the 18-month sentence.  (*See* Docket No. 57).  In addition, Defendant did not appeal the Court's imposition of a 3-year term of supervised release and the parties agree that the term should be reimposed at this time.  (*Id*.).  The Court continues to believe that the term of supervised release is necessary in order to deter Defendant from committing this same offense again due to: his prior

recidivism and a total of three convictions; his admissions that he had some financial means as he worked consistently and his family operated a restaurant business but had not made significant efforts to gain legal entry to this country; and, the Court's findings that he did not show genuine remorse for his "illegal crossing because I think in your mind you did what you thought you had to do, despite the consequences." (Docket No. 49 at 44). With that said, the term of supervised release is reduced to thirty-four (34) months because Defendant served eight (8) days before the sentence was vacated, several weeks have since passed since that time, and the Court does not believe that subjecting him to term of supervised release which would run beyond the term's expiration date under the original judgment (i.e., October 5, 2026) is appropriate. Finally, the Court's revised judgment will also reflect that the special assessment was satisfied by Defendant on July 7, 2023. *See Text Entry 7/7/23*.

IV.     CONCLUSION

Based on the foregoing, the Court will enter an amended judgment resentencing Defendant to time served incarceration, 34 months' supervised release and a $100 special assessment. An amended judgment follows.

> *s/Nora Barry Fischer*
> Nora Barry Fischer
> Senior United States District Judge

Dated: November 28, 2023

cc/ecf: All counsel of record